# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| TONY L. BLOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09-0974 |
| | ) | JUDGE HAYNES |
| | ) | |
| FLORIM USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## M E M O R A N D U M

Plaintiff, Tony L. Block, filed this action under the Americans with Disabilities Act, 42 U.S.C. § 12112(a) ("ADA"), the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 et seq. ("THRA") and the Tennessee Disability Act, Tenn. Code § 8-50-103 ("TDA") against the Defendant, Florim USA, Inc. Plaintiff's claims are that the Defendant discriminated against him on the basis of his disability. After the Defendant filed its answer, the parties proceeded with discovery.

Before the Court is the Defendant's motion for summary judgment (Docket Entry No. 13), contending, in sum, that Plaintiff is not disabled under the ADA and Plaintiff was not replaced by a person outside the protected class. In response (Docket Entry No. 18), Plaintiff asserts, in essence, that he has established a prima facie case that he is disabled and Defendant refused to offer Plaintiff a reasonable accommodation.

For the reasons set forth below, the Court concludes that Plaintiff has failed to establish a prima facie case of disability discrimination. Thus, the Defendant's motion for summary judgment should be granted.

# I. FINDINGS OF FACT[1]

Defendant Florim manufacturers glazed tile for residential and commercial buildings in Clarksville, Tennessee. Plaintiff began working for Defendant in 1993 and eventually became a maintenance technician. (Docket Entry No. 19, Plaintiff's Response to Defendant's Statement of Undisputed Facts, at ¶ 1). As a maintenance technician, Plaintiff installs, repairs and maintains machinery and equipment such as engines, motors, pneumatic tools, conveyor systems, and production machines and equipment. Id. at ¶¶ 3-4. Plaintiff agrees that the physical demands for a maintenance technician are as follows:

> While performing the duties of this job, the employee is regularly required to stand; walk; use hands to finger, handle or feel; reach with hands and arms; and talk or hear. The employee is occasionally required to climb or balance and stoop, kneel, crouch, or crawl. The employee must regularly lift and/or move up to 10 pounds, frequently lift and/or move up to 25 pounds, and occasionally lift and or move up to 100 pounds.

Id. at ¶¶ 4-5.

On October 27, 2006, Plaintiff injured his right knee and was released without any medical restrictions on April 5, 2007. Id. at ¶ 12. On April 4, 2007, Plaintiff injured his left knee at work. Id. at ¶ 9. Plaintiff's physician restricted him to light duty with orders that he use crutches and avoid standing, walking or climbing. Id. at ¶ 10. On September 17, 2007, Plaintiff's restrictions included no lifting over 50 pounds, no climbing stairs or ladders, no squatting, kneeling or crawling, and no

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Because there are not any material factual disputes, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

pushing or pulling of anything over 10 pounds. Id. at ¶ 11. On September 25, these restrictions were also applied in reference to Plaintiff's right knee. Id. at ¶ 12.

As a result of Plaintiff's restrictions, Plaintiff could not work as a maintenance technician and was placed on light duty in quality control visually inspecting tiles as they came out of the kiln. Id. at ¶¶ 13-14. Plaintiff then moved to the tile samples department where he glued tiles to retailer sample boards. Id. at ¶ 15. According to Timothy Swaw, Defendant's human resources manager, working in the samples department requires lifting, bending, stooping, and kneeling, but due to his restrictions, Plaintiff was placed on light duty in a non-budgeted position in the samples department to accommodate him while he was on restricted duty. (Docket Entry No. 13, Exhibit 2, Swaw Deposition at p. 73). Because the position was temporary, the position lacks a job description. Id., Exhibit 11, at 2. Swaw explained that for Plaintiff to continue in that same position, Plaintiff "would have to have been able to perform the complete job, or we would have to ask other employees to pick up the slack, or we would have to hire somebody else to work with [Plaintiff] to do the functions of the job that he couldn't do." Id., Exhibit 2, Swaw Deposition at p. 73.

Plaintiff stated that he did not need an accommodation to continue his job in the samples department. (Docket Entry No. 13, Exhibit 1, Plaintiff Deposition at p. 176). While on light duty, Plaintiff continued to receive his full maintenance technician rate of pay. (Docket Entry No. 19, at ¶ 18). Plaintiff concedes that no one at Florim belittled or otherwise criticized him for being on light duty or because of his physical condition. Id. at ¶ 19.

On March 4, 2008, after about a year on light duty, Plaintiff reached his maximum medical improvement ("MMI") with a five percent (5%) permanent impairment to his right and left lower extremities. Id. at ¶ 20. Plaintiff's permanent restrictions included no lifting over 50 pounds, no

climbing stairs or ladders, no squatting, kneeling or crawling, and no pushing or pulling of anything over 10 pounds. Id. at ¶ 21. Although Plaintiff disagreed with the degree of these restrictions, Plaintiff did not ask his physician to modify any of his restrictions. Id. at ¶ 33. Plaintiff stated that he did not request an accommodation, but that he "was never given the opportunity" to make such a request. Id. at ¶ 26. Plaintiff testified that he does not believe that he has any physical limitations that would keep him from doing maintenance work. Id. at ¶ 40.

Based on Plaintiff's restrictions, Swaw concluded that Plaintiff was unable to perform the essential functions of the maintenance technician job. Id. at ¶ 22. Swaw did not consider Plaintiff's physician-ordered restrictions to be significant enough to implicate an ADA reasonable accommodation inquiry. Id. at ¶ 24. Swaw viewed Plaintiff as having restrictions that precluded him from performing the essential functions of his job at Florim, but Swaw stated that the restrictions "did not impair him from performing other jobs" either within or outside of Florim. Id. at ¶ 25. According to Swaw, Florim did not have any open positions that Plaintiff could perform within Plaintiff's limitations. Id. at ¶ 29. Plaintiff testified: "Q. Did you–anything else happen in that conversation that you can recall with [Swaw]? A. He pretty much said his hands were tied. There's nothing he could do." (Docket Entry No. 13, Plaintiff Deposition at p. 83).[2] Defendant

---

[2]In an effort to establish a genuine issue of fact, Plaintiff cites his verified complaint that "When Plaintiff inquired if there was not something he could do he was advised [by Swaw] that he 'made too much money.'" (Docket Entry No. 1, Verified Complaint at ¶ 10). "It is true that, if a litigant signs a complaint 'under penalty of perjury pursuant to 28 U.S.C. § 1746,' the verified complaint 'therefore carries the same weight as would an affidavit for the purposes of summary judgment.'" Myers v. Transcor America, LLC, No. 3:08-295, 2010 WL 3824083, at *9 (M.D. Tenn. Sept. 30, 2010) (citing El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008)) (footnote omitted). Here, Plaintiff's complaint only states that Plaintiff "hereby make oath in due form of the law that the statements contained in my foregoing complaint are true and correct to the best of my knowledge, information and belief." However, "in order for a verified complaint to defeat summary judgment, it is necessary that the plaintiff sign the complaint under penalty of perjury." Id. (citing El Bey, 530

terminated Plaintiff on March 21, 2008. (Docket Entry No. 19, at ¶ 32). Defendant did not replace Plaintiff in either the maintenance or sampling department following his termination. Id. at ¶ 34.

Plaintiff cites three job postings between February 29, 2008 to March 31, 2008, for kiln utility operator, press operator and selection team leader positions that are within Plaintiff's work restrictions. Under the heading "Qualifications, Skills, Abilities and Physical Requirements," these job postings list, among other things, the following: "Ability and capable of regularly lifting and moving up to 10 pounds, frequently lifting and moving up to 25 pounds and occasionally lifting and moving up to 50 pounds." (Docket Entry No. 20, Attachment 1 at 6-8). Swaw testified that the job postings were not job descriptions, but only provided brief summaries of the particular job and did "not go into details of the particular requirements" for each job. (Docket Entry No. 13, Exhibit 2, Swaw Deposition at pp. 81, 86). Swaw conceded that Plaintiff was not considered for these positions based upon Plaintiff's restrictions. Id. at pp. 81-86.

After his termination, Plaintiff performed several jobs requiring physical labor without any physical limitations. Id. at ¶¶ 35-36. Plaintiff handled and carried bags of cement treatment weighing 50-60 pounds by himself without any difficulty. Id. at ¶ 37. Throughout the day, Plaintiff worked on his hands and knees, bending and crawling. Id. at ¶ 38. Plaintiff also dug post holes by hand and carried buckets of wet cement to set post holes. Id. at ¶ 39. Plaintiff also deer hunts without limitations and tends his land with a tractor and a "bush hog." Id. at ¶ 41; Docket Entry No. 13, Exhibit 1, Plaintiff Deposition at pp. 26-27.

---

F.3d at 414; Rodgers v. Hawley, 14 Fed. Appx. 403, 409 n. 2 (6th Cir.2001)). Thus, the Court will not consider the cited allegation.

Plaintiff is currently a lead man for a home improvement crew where he carries and installs sheetrock on walls and ceilings. Id. at ¶¶ 42-43. Plaintiff's main job, however, is installing roofs that includes carrying bundles of tar shingles up a 14-to 16-foot ladder for the majority part of the day. Id. at ¶ 44. Plaintiff is able to perform this job without any physical limitations, even roofing a house where the heat index was over 100 degrees. Id.

As to his restrictions, Plaintiff stated:

Q: Do your – these restrictions, or these limitations as you've described them, do they keep you from doing anything that you want to do in your life?

A: Right now, no. I mean, I'm not gonna sit hear and say that, like, if I do something that's gonna aggravate them, I ain't gonna say they don't hurt the next morning.

Q: Okay.

A: But it doesn't stop me from doing my job. Never has.

Q: It doesn't stop you from, you know, living your personal life, your hunting, and things you like to do outside of work?

A: No, sir. No, sir.

(Docket Entry No. 13, Exhibit 1, Plaintiff Deposition at p. 90).

## II. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex

Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be

granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> . . . .
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

> It is likewise true that:
> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the

hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

The ADA was enacted to counterbalance society's historic tendency to isolate and segregate individuals with disabilities. 42 U.S.C. § 12101. The ADA serves as a mechanism to level the playing field so that individuals living with disabilities are treated fairly and afforded equal opportunity within the workplace, among other areas. Id. Thus, the ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a).

To recover on a claim of discrimination under the ADA, a plaintiff must show that: (1) he is an individual with a disability; (2) he is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and (3) he was either denied a reasonable accommodation for his disability or he suffered an adverse employment action solely because of her disability. Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1178 (6th Cir. 1996); Smith v. Ameritech, 129 F.3d 857, 866 (6th Cir. 1997). A plaintiff may prove that he was discriminated against based upon his disability either through direct or indirect evidence. Id.

The Sixth Circuit has stated that if a plaintiff presents direct evidence of disability discrimination:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

Hedrick v. Western Reserve Care Sys., 355 F.3d 444, 453 (6th Cir. 2004) (quoting Monette, 90 F.3d at 1186).

However, where a plaintiff seeks to establish discrimination through indirect evidence, courts employ the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) burden-shifting approach so that the

> plaintiff may establish a prima facie case of discrimination by showing that: (1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. The defendant must then offer a legitimate explanation for its action. If the defendant satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. Under this scheme, the plaintiff retains the ultimate burden of persuasion at all times.

Hedrick, 355 F.3d at 453 (quoting Monette, at 1186-87); Torok v. Gibralter Veterinary Hosp., Inc., 442 F. Supp.2d 438, 457 (E.D. Mich. 2006) ("Whether Plaintiff proceeds under the 'direct evidence' or the McDonnell Douglas burden-shifting mode of analysis, she cannot succeed on an ADA claim of disability discrimination absent a showing that she is 'disabled' within the meaning of the statute.").

13

An individual is disabled under the ADA if: (1) he has a physical or mental impairment that substantially limits one or more of his major life activities; (2) he has a record of such impairment; or (3) he is regarded as having such an impairment. 42 U.S.C. § 12102(2). "'If [an employee's] condition does not meet one of these categories even if he was terminated because of some medical condition, he is not disabled within the meaning of the Act. The ADA is not a general protection for medically afflicted persons.'" Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 703 (6th Cir. 2008) (citation omitted).

Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). A major life activity is substantially limited if the employee is:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

Id. at § 1630.2(j)(i), (ii). In the context of working, a plaintiff would be required to show an inability to work in a broad class of jobs, not just "one type of job, a specialized job, or a particular job of choice." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491, 492 (1999); 29 C.F.R. § 1630.2(j)(3)(I).

In Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002), the Supreme Court directed that for purposes of qualification under the ADA's definition of disabled, the terms

14

"substantially" and "major" must be "interpreted strictly."[3] The Court stated that "Merely having an

impairment does not make one disabled for purposes of the ADA." Id. at 195. For an impairment

to be a substantial limitation of a major life activity, the impairment must "prevent[] or severely

restrict[] [an] individual from doing activities that are of central importance to most people's daily

lives." Id. at 198. Further, "[t]he impairment's impact must also be permanent or long term." Id.

Thus, "any impairment that only moderately or intermittently prevents an individual from performing

major life activities is not a substantial limitation under the [ADA]." Mahon v. Crowell, 295 F.3d

585, 590-91 (6th Cir. 2002).

Under the ADA, the disability issue must be determined on a case-by-case basis. See

Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566, 567 (1999) (for an ADA claim, the ADA

plaintiff must "prove a disability by offering evidence that the extent of the limitation in terms of

their own experience . . . is substantial"). Moreover, "the determination of whether an individual is

disabled should be made with reference to measures that mitigate the individual's impairment."

Sutton, 527 U.S. at 475.

Plaintiff contends (1) that his physical impairment substantially limits one or more of his

major life activities, such as lifting and performing manual tasks; (2) that he has a record of such an

impairment; and (3) that he was regarded as having such an impairment by Defendant. Defendant

---

[3]The Court notes that the "ADA Amendments Act of 2008" ("ADAAA"), that became
effective January 1, 2009, Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559 (2008), "does not apply
retroactively to govern conduct occurring before the Act became effective." Milholland v. Sumner
County Bd. of Educ., 569 F.3d 562, 565 (6th Cir. 2009). Thus, because the alleged conduct occurred
before the ADAAA became effective the Court is to apply the ADA law that was in effect at the time
of the alleged conduct.

contends that Plaintiff cannot prove any of these categories and further contends that Plaintiff was not replaced.

## A. ACTUAL DISABILITY

Plaintiff disagrees with the degree of his restrictions imposed by his physician and that he does not believe that he has any physical limitations that would preclude doing maintenance work. Plaintiff further testified that following his termination he performed several jobs requiring physical labor without any physical limitations. Plaintiff handled and carried bags of cement treatment weighing 50-60 pounds by himself without any difficulty, he worked on his hands and knees and would bend and crawl, he dug post holes by hand, and carried buckets of wet cement to set post holes. Plaintiff also deer hunts without limitations and tends his land with a tractor and a "bush hog." Plaintiff currently works carrying sheetrock and installing it on walls and ceilings, as well as installing roofs that includes carrying bundles of tar shingles up a 14-to 16-foot ladder. Plaintiff is able to perform these jobs without any physical limitations. Plaintiff also testified that his restrictions or limitations have not prevented him from doing anything that he would want to do in his life.

Based on this evidence, the Court concludes that Plaintiff fails to show that his impairments prevent or severely restrict him "from doing activities that are of central importance to most people's daily lives." Toyota, 534 U.S. at 198. Moreover, Plaintiff fails to present any evidence in terms of his own experience that any limitation of his is substantial. Accordingly, Plaintiff has not presented evidence that he has an actual disability.

## B. RECORD OF DISABILITY

To have a "record of such impairment," a plaintiff must prove she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. 1630.2(k). Thus, claims under this theory "would appear to succeed or fail for many of the same reasons as claims under § 12102(2)(A) (based upon an actual impairment), because both require a predicate showing of a mental or physical impairment that substantially limits one or more major life activities." Edwards v. Ford Motor Co., 218 F. Supp.2d 846, 851 (W.D. Ky. 2002); see Sebest v. Campbell City School Dist. Bd. of Educ., 94 Fed. Appx. 320, 326 (6th Cir. 2004) (In rejecting Plaintiff's argument that he had a record of a disability the Sixth Circuit stated, "[Plaintiff] has not provided evidence that the leukemia from which he suffered in the 1980s substantially limited a major life activity. Declaring leukemia a disability per se would contravene this court's 'statutory obligation to determine the existence of disabilities on a case-by-case basis.'") (citation omitted).

Plaintiff has not presented any medical records in support of his "record of" claim, but relies on his work restrictions. As stated previously, Plaintiff has not shown that he was substantially limited in performing major life activities. For these reasons, the Court concludes that Plaintiff has failed to present evidence that he had a "record of" disability. Yanna-Trombley v. Saturn Corp., No. 1:04-0026, 2005 WL 2230068, at *5 (M.D. Tenn. Aug. 31, 2005).

## C. REGARDED AS DISABLED

The chief aim of the ADA's "regarded-as-disabled" provision is to "'stamp out the stereotyping of and discrimination against persons with disabilities in all their forms.'" Talley v. Family Dollar Stores of Ohio, Inc., 542 F.3d 1099, 1106 (6th Cir. 2008) (quoting Ross v. Campbell Soup Co., 237 F.3d 701, 706 (6th Cir.2001)). In Ross, the Sixth Circuit stated, "[A]n individual may

fall into the definition of one regarded as having a disability if an employer ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties." 237 F.3d at 706. Thus, "[u]nder the 'regarded as' prong of the ADA, membership in the protected class becomes a question of intent." Id.

In analyzing the regarded-as prong of the ADA, the Supreme Court has provided the following guidance:

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual-it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

Sutton, 527 U.S. at 489.

"Where an employer follows the recommendations of a treating physician, the employer's belief that the plaintiff is substantially limited is not considered mistaken." E.E.O.C. v. Burlington Northern & Santa Fe Ry. Co., 621 F. Supp.2d 587, 595 (W.D. Tenn. 2009) (citing Mahon, 295 F.3d at 592) (where employer did not wrongly view plaintiff "through a stereotype of disability, 'but rather follow [ed] the specific recommendations of [a] treating physician, the course the Supreme Court says is the correct one[.]'") (citation omitted); Gruener v. Ohio Cas. Ins. Co., 510 F.3d 661, 665 (6th Cir. 2008) (employer "simply tracked the specific and valid restrictions prescribed by her own doctor"); Cannon v. Levi Strauss & Co., 29 Fed. Appx. 331, 336 (6th Cir.2002).

Plaintiff asserts that he did not need an accommodation to continue the job he was performing in the samples department. However, Plaintiff's position was a temporary, non-budgeted

position that was created to accommodate Plaintiff while he was on restricted duty. To continue in that same position, Plaintiff would have been required to perform the complete job that entails lifting, bending, stooping, and kneeling. "The ADA does not require employers to create a new position for a disabled employee who can no longer perform the essential functions of his job." Smith, 129 F.3d at 867. Additionally, an employer is not required to convert a temporary position into a permanent position to accommodate a disabled employee. Hoskins v. Oakland County Sherriff's Department, 227 F.3d 719, 729 (6th Cir.2000). Plaintiff also admitted that no one belittled or criticized him for being on light duty or because of his physical condition.

Yet, Plaintiff contends that three jobs were posted between February 29, 2008 to March 31, 2008, that were positions within Plaintiff's work restrictions. Swaw stated that these job postings were only summaries of the particular job and did not detail the particular requirements for each job. Swaw stated that he did not consider Plaintiff for these jobs based upon Plaintiff's restrictions. Defendant does not provide a job description of the physical demands for these particular jobs. Thus, the Court concludes that Plaintiff has established a genuine issue of material fact that Defendant regarded him as a person with a disability. Ross, 237 F.3d at 706 ("Thus, an individual may fall into the definition of one regarded as having a disability if an employer ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties.").

Defendant argues that even if Plaintiff can establish that Defendant regarded him as disabled Plaintiff's claim still fails because he cannot prove that he was replaced. Plaintiff concedes that he was not replaced in either the maintenance or sampling department following his termination. Therefore, the Court concludes that Plaintiff cannot establish his claim for disability discrimination

under this theory. <u>Nasser v. City of Columbus</u>, 92 Fed. Appx. 261, 263 (6th Cir. 2004) (citing

<u>Swanson v. Univ. of Cincinnati</u>, 268 F.3d 307, 314 (6th Cir. 2001)); <u>McFarland v. Century Truss Co.</u>,

518 F. Supp.2d 977, 982 (E.D. Mich. 2007) (citing <u>Hedrick</u>, 355 F.3d at 453).

## C. REQUEST FOR AN ACCOMMODATION

"[T]he disabled individual bears the initial burden of proposing an accommodation and

showing that *that* accommodation is objectively reasonable." <u>Monette</u>, 90 F.3d at 1183 (emphasis

in original). "Part of this burden is that a plaintiff show that he requested the specific

accommodation; a plaintiff may not rely on accommodations that he did not request." <u>Manigan v.</u>

<u>Southwest Ohio Regional Transit Authority</u>, 385 Fed. Appx. 472, 478 n.5 (6th Cir. 2010). "As a

general rule, the employee must request a reasonable accommodation to trigger the employer's duty

to engage in the interactive process." <u>Arredondo v. Howard Miller Clock Co.</u>, No. 1:08-CV-103,

2009 WL 2871171, at *9 (W.D. Mich. 2009) (citing <u>Burns v. Coca-Cola Enters., Inc.</u>, 222 F.3d 247,

258-59 (6th Cir. 2000)); <u>Lockard v. General Motors Corp.</u>, 52 Fed. Appx. 782, 788 (6th Cri. 2002)

("Because we find Lockard failed to request a reasonable accommodation from her employer, the

defendant's duty to engage in an interactive search for a reasonable accommodation never arose.").

Plaintiff admits that he did not request an accommodation. Plaintiff only states that he was

not given the opportunity to make such a request. The record reveals that Plaintiff reached

maximum medical improvement on March 4, 2008 and was not terminated until March 21, 2008.

Plaintiff does not explain why he was unable to request an accommodation during this time frame

or when he met with Swaw. Nor did Plaintiff request consideration for one of the three job postings.

Based upon Plaintiff's restrictions, Swaw concluded that Plaintiff was unable to perform the

essential functions of the maintenance technician job, but believed that the restrictions did not impair

Plaintiff from performing other jobs either within or outside of Florim. Swaw stated that Florim did not have any open positions that Plaintiff could perform within Plaintiff's limitations. Upon meeting with Plaintiff, Swaw stated that "his hands were tied. There's nothing he could do."

Because Plaintiff fails to present evidence that he requested a reasonable accommodation related to his medical restrictions, the Court concludes that Plaintiff's claim is without merit.

Without a viable federal claim, the Court declines to exercise supplemental jurisdiction over the state law claims. See e.g., Wal-Juice Bar, Inc. v. Elliot, 899 F.2d 1502, 1504 (6th Cir. 1990). Thus, Defendant's motion for summary judgment (Docket Entry No. 13) should be granted, except that Plaintiff's state law claims should be dismissed without prejudice.

An appropriate Order is filed herewith.

**ENTERED** this the _18_ day of February, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge